UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEPHEN A. DONOVAN, | CASE NO. 4:16CV1910 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| XPO LOGISTICS FREIGHT, INC., | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

This matter is before the undersigned on a motion for partial summary judgment filed by Plaintiff Stephen A. Donovan ("Plaintiff") on May 15, 2017 and on a motion for summary judgment filed by Defendant XPO Logistics Freight, Inc. ("Defendant") on May 31, 2017 . ECF Dkt. #24; #25. Defendant filed a memorandum in opposition to Plaintiff's motion for partial summary judgment on May 31, 2107. ECF Dkt. #27. Plaintiff filed a reply to Defendant's memorandum in opposition to Plaintiff's motion for partial summary judgment and a memorandum contra Defendant's motion for summary judgment on June 13, 2017. ECF Dkt. #29. Defendant filed a reply in support of its motion for summary judgment on June 20, 2017. ECF Dkt. #30.

For the following reasons, the Court GRANTS Defendant's motion for summary judgment (ECF Dkt. #25) and DENIES Plaintiff's motion for partial summary judgment (ECF Dkt. #24).

**I.     FACTUAL AND PROCEDURAL HISTORY**

**A.     Procedural History**

On June 27, 2016, Plaintiff filed a complaint with the Court of Common Pleas, Trumbull County, Ohio against Defendant. ECF Dkt. #1-2. Plaintiff alleged two claims in his complaint: (1) wrongful termination from employment in violation of public policy and (2) invasion of privacy. *Id.* Defendant answered the complaint on August 1, 2016. ECF Dkt. #4. On July 29,

2016, Defendant removed the case to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1446 and 28 U.S.C. § 1332. ECF Dkt. #1.

On August 24, 2016, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #8. On May 15, 2017, Plaintiff filed the instant motion for partial summary judgment as to his first claim of wrongful termination from employment in violation of public policy. ECF Dkt. #24. On May 31, 2017, Defendant filed a motion for summary judgment as to both Plaintiff's claims of wrongful termination from employment in violation of pubic policy and invasion of privacy. ECF Dkt. #25; #25-1. Defendant also filed a memorandum in opposition to Plaintiff's motion for partial summary judgment on May 31, 2107. ECF Dkt. #27. On June 13, 2017, Plaintiff filed a reply to Defendant's memorandum in opposition to Plaintiff's motion for partial summary judgment and a memorandum contra Defendant's motion for summary judgment. ECF Dkt. #29. On June 20, 2017, Defendant filed a reply in support of its motion for summary judgment. ECF Dkt. #30.

**B.      Factual History**

Defendant is a less-than-truckload transportation company that provides freight pickup and delivery services for commercial and residential customers throughout North America using a large network of Service Centers. ECF Dkt. #25-1 at 1. Defendant's Service Center in Lordstown, Ohio, where Plaintiff worked, employs approximately 243 individuals. *Id.* The Lordstown Service Center's management team includes two Freight Operations Managers, eight Freight Operations Supervisors, and one Personnel Supervisor. *Id*. at 1-2. Additionally, the Lordstown Service Center hires hourly employees, which includes Driver Sales Representatives ("DSR"), Customer Service Representatives, dockworkers, and other various employees. *Id*. at 2.

Defendant has a written policy regarding the use of illegal drugs or the abuse of alcohol or prescription drugs. *Id*. Defendant's Alcohol & Drugs policy specifically complies with United States Department of Transportation ("DOT") Federal Motor Carrier Safety Regulations, Section 49 CFR as amended. *Id*. Because of the safety-sensitive nature of their position, individuals who are employed as DOT-regulated truck drivers are subject to random testing for alcohol and drugs.

*Id.* The random selection process is administered by DSI Medical Services Inc ("DSI"), a third-party. *Id.*

At the Lordstown Service Center, after drivers are selected for random testing by DSI, DSI provides a list of employees' names for testing to the Personnel Supervisor, Jonathan Marafiote ("Marafiote"). *Id.* Marafiote then arranges for a specimen collection company to come to the facility to collect specimens from the drivers. *Id.* Marafiote personally informs the drivers who have been selected for random testing to come to a private area of the office to provide a specimen. *Id.* After the specimens are collected, they are tested by an outside laboratory according to DOT regulations. *Id.*

Following testing by the outside laboratory, a Medical Review Officer ("MRO"), who is not employed by Defendant, receives and reviews the results of the drug and alcohol tests conducted by the outside laboratory. *Id.* at 3. The MRO either confirms negative test results or contacts donors who test positive for prohibited substances to determine if there are any justified medical explanations for the positive test result, and then takes the appropriate actions. *Id.* When tests produce positive results, the MRO informs the donors of their ability to have their split-specimen tested within the following 72 hours by a second laboratory, and the MRO provides the donors with contact information to have that testing done. *Id.* Finally, the MRO reports confirmed negative and positive tests to Defendant's corporate human resources personnel. *Id.* No one employed by Defendant is involved in the determination as to whether a drug test is ruled negative or positive; that determination is made by the MRO. *Id.*

At the Lordstown Service Center, corporate human resources then sends employee test results, whether negative or positive, to Marafiote. *Id.* When informed of a positive test, Defendant is required to take immediate action with respect to drivers in DOT-regulated positions, removing them from all safety-sensitive duties as quickly as possible. *Id.* When an employee tests positive for an illegal substance, Defendant's policy provides that the employee is subject to immediate termination. *Id.*

Defendant hired Plaintiff as a driver sales representative ("DSR") supplemental at Defendant's Lordstown, Ohio Service Center starting on April 12, 2010. *Id.* Defendant became

a regular DSR approximately 90 days after he began working for Defendant. *Id*. at 4. As a DSR, Plaintiff was responsible for driving tractor-trailer trucks, both as a line-haul driver and as a city driver during his employment with Defendant. *Id*. As a line-haul driver, Plaintiff would take trailers loaded with freight from his assigned location to another one of Defendant's facilities and then return to his assigned location with trailers containing freight bound for that location. *Id*. As a city driver, Plaintiff was responsible for picking up freight from, and delivering freight to, Defendant's customers from his assigned location on a daily basis. *Id*. At all times, Plaintiff was an at-will employee of Defendant without any contract of employment for a definite time. *Id*.

At the time of his hiring, Plaintiff went through orientation and training. *Id*. Plaintiff acknowledged that he had been "informed of the company Employee Assistance Program (EAP) and the company policy regarding illegal drugs and alcohol abuse [and that he] fully underst[oo]d the company policy on substance abuse and acknowledge[d] that he [would] comply with the Department of Transportation (DOT) mandated drug and alcohol testing program." *Id*. Additionally, Plaintiff acknowledged receiving the "Alcohol and Drugs Don't Work Here" driver information packet. *Id*. Plaintiff also watched a video regarding drug and alcohol testing as part of his orientation and training. *Id*. Additionally, Plaintiff was given instructions on how to access Defendant's alcohol and drugs policy online that was available to all employees. *Id*.

On May 12, 2016, Plaintiff arrived at work and Marafiote called Plaintiff into his office to inform him that Plaintiff had to take a random alcohol and drug test. *Id*. at 5. Plaintiff then went into the designated area where the specimens were being collected and provided his specimen for testing. *Id*. On May 16, 2016, Dr. Frank Bonikowski ("Bonidowski"), the MRO, received a report from the Quest Diagnostics laboratory in Lenexa, Kansas regarding a urine specimen that was collected from Plaintiff on May 12, 2016. *Id*. The report indicated that Plaintiff had tested positive for cocaine, with a result of 296 ng/mL, nearly three times the allowed limit under DOT regulations. *Id*. That same day, in accordance with Defendant's policy and DOT regulations, Bonikowski spoke with Plaintiff, identifying himself as the MRO and verified Plaintiff's identity. *Id*. Bonidowski informed Plaintiff that Plaintiff had tested positive for cocaine. *Id*. Bonikowski asked Plaintiff about any medications Plaintiff was taking, and Plaintiff provided that

information. *Id*. Bonikowski asked Plaintiff if he was in contact with somebody who had used cocaine and Plaintiff said that he was. *Id*.

As the information provided by Plaintiff did not provide a justified medical explanation for his positive test result for cocaine, and the pathway of ingestion is immaterial to the MRO's ruling, Bonikowski concluded that the test was a verified positive test. *Id*. Subsequently, Bonidowski sent Plaintiff's verified DOT alcohol and controlled substances test results from Plaintiff's May 12, 2016 random test to Defendant's corporate human resources department. *Id*. at 6.

On May 17, 2016, Marafiote, Bill Hoffman ("Hoffman"), Defendant's Service Center Manager for the Lordstown, Ohio facility, and John Ramson ("Ramson"), Defendant's Human Resources Generalist, received an email from Defendant's corporate human resources department informing them that Plaintiff had tested positive on a random drug screen. *Id*. At 6. Pursuant to Defendant's policy, a positive test on a random drug screen is cause for immediate termination. *Id*. Plaintiff was brought into Hoffman's office by Hoffman. *Id*. Hoffman, Marafiote and Ramson, who was on the phone in Hoffman's office, told Plaintiff he was being terminated effective immediately because he had tested positive on the random drug screen in violation of Defendant's policy. *Id*. at 7. During the meeting, Plaintiff protested that he had not done cocaine, that he had kissed a woman who he believed had done cocaine, and requested to take a second drug test at his own expense. *Id*. Plaintiff was denied any option for a retest, and Hoffman gathered Plaintiff's belongings from his locker and gave them to Plaintiff. *Id*.

After Plaintiff's termination, Plaintiff alleged that another DSR, Brian Gallagher ("Gallagher") sent Plaintiff text messages and spoke with Plaintiff, stating that Gallagher had heard from Walter Holtz ("Holtz"), a Freight Operations Manager at the Service Center, that Plaintiff had failed a drug test. *Id*. However, Gallagher denies that any manager or supervisor at the Service Center ever told him that Plaintiff had been terminated for failing a drug test, nor has he ever overheard a manager or supervisor making any such statement. *Id*. Gallagher claims that any statement was merely a rumor going around the Service Center. *Id*. Gallagher believes "that when it became known that [Plaintiff] was not working for XPO [Defendant] any longer, with the

-5-

drug testing having happened before his termination, people just assumed he [Plaintiff] had been terminated because of a drug test." *Id*. Similarly, Holtz was not aware of who started the rumors that Plaintiff had been terminated for failing a drug test and he had never overheard a manager or supervisor at the Service Center tell any hourly employee that Plaintiff had been terminated for failing a drug test. *Id*. at 7-8. Although Holtz has been asked by a couple of hourly employees why Plaintiff was terminated, Holtz told them that such information is confidential and strictly between Plaintiff and Defendant. *Id*.

Finally, Plaintiff also alleged that after his termination, Jim Hoon ("Hoon"), a dockworker at the Service Center, told Plaintiff that Hoon had "heard" from another unnamed dockworker that Plaintiff had failed a drug and alcohol test. *Id*. Plaintiff admits that no information regarding the results of his drug test were in the newspaper, on television, or the internet. *Id*. Plaintiff admits that any information regarding the results of his drug test were confined to the Service Center. *Id*. Plaintiff does not believe Hoffman, Marafiote, Ramson, or Bonikowski hold any ill will or a grudge against him, nor does he believe that these individuals would make false statements about him. *Id*.

## II.  STANDARD OF REVIEW

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;
> or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

Upon filing a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the nonmoving party's claim. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009) (citation omitted); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n. 12 (6th Cir.1989). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the moving party relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In response, if the moving party establishes the absence of a genuine issue of material fact, in order to defeat summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir.2009) (citation omitted). In this regard, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment"; rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379–80 (6th Cir.2007) (citation omitted); *see also Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir.2008)(citation omitted). Moreover, the non-moving party must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–587, 106 S.Ct. 1348; see also *Barr v. Lafon*, 538 F.3d 554, 574 (6th Cir.2008).

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87, 106 S.Ct. 1348; *see also Anderson*, 477 U.S. at 252.

### III. LAW AND ANALYSIS

Defendant first moves for summary judgment based on a federal preemption argument, and then asserts that Plaintiff fails to meet the required elements of this wrongful termination in violation of public policy claim. ECF Dkt. #25. While Defendant addresses its preemption argument first, this Court will first address Defendant's argument that Plaintiff failed to meet the required elements of the wrongful termination claim because the basis of Plaintiff's first claim in his complaint solely relies on Ohio Rev. Code §4511.19 (D)(3) to argue his wrongful termination claim.

#### A. Wrongful Termination in Violation of Public Policy Claim

In Ohio, the employment-at-will doctrine, " is that a general or indefinite hiring is terminable at the will of either party, for any cause, no cause or even in gross or reckless disregard of any employee's rights, and a discharge without cause does not give rise to an action for damages." *Collins v. Rizkana*, 652 N.E.2d 653, 656 (Ohio 1995)(citing numerous cases). However, in *Greeley v. Miami Valley Maint. Contractors, Inc.*, 551 N.E.2d 981 (Ohio 1990), the Ohio Supreme Court expressly recognized an exception to the employment-at-will doctrine by establishing that a cause of action for wrongful termination in violation of public policy may be brought in tort.

In order to prove a wrongful termination in violation of public policy claim under Ohio law, a plaintiff must establish: (1) that clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and, (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). *Painter v. Graley*, 639 N.E.2d 51, 57 n.8 (Ohio 1994); *Plona v. United Parcel Service, Inc.*, 558 F.3d 478, 481 (6th Cir. 2009); *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 311 (6th Cir. 2000).

The clarity and jeopardy elements are questions of law to be determined by the court. *Collins*, 652 N.E.2d at 658. When identifying whether Plaintiff's wrongful termination violates a clear public policy, courts should be mindful "that an exception to the traditional doctrine of employment-at-will should be recognized only where the public policy alleged to have been violated is of equally serious import as the violation of a statute." *Painter*, 639 N.E.2d at 56 (quoting 551 N.E.2d at 987.) Moreover, "any exception to the at-will doctrine should be narrowly applied." *Dean v. Consol. Equities Realty #3, L.L.C.*, 914 N.E.2d 1109, 1112 (Ohio Ct. App. 2009)(citing *Hale v. Volunteers of Am.*, 816 N.E.2d 259 (Ohio Ct. App. 2004)).

Plaintiff in the instant case bases his wrongful termination claim on Ohio Rev. Code §4511.19 (D)(3) and asserts that a clear public policy is found in that statute. *See* ECF Dkt. #24. In moving for summary judgment on this claim, Defendant contends that Plaintiff cannot establish a violation of clear public policy because Plaintiff provides no basis that Ohio Rev. Code § 4511.19 (D)(3) is the public policy of Ohio. ECF Dkt. #25-1 at 13. Ohio Rev. Code §4511.19 (D)(3) states:

> Upon the request of the person who was tested, the results of the chemical test shall be made available to the person or the person's attorney, immediately upon the completion of the chemical test analysis. If the chemical test was obtained pursuant to division (D)(1)(b) of this section, the person tested may have a physician, a registered nurse, or a qualified technician, chemist, or phlebotomist of the person's own choosing administer a chemical test or tests, at the person's expense, in addition to any administered at the request of a law enforcement officer. If the person was under arrest as described in division (A)(5) of section 4511.191 of the Revised Code, the arresting officer shall advise the person at the time of the arrest that the person may have an independent chemical test taken at the person's own expense. If the person was under arrest other than described in division (A)(5) of section 4511.191 of the Revised Code, the form to be read to the person to be tested, as required under section 4511.192 of the Revised Code, shall state that the person may have an independent test performed at the person's expense. The failure or inability to obtain an additional chemical test by a person shall not preclude the admission of evidence relating to the chemical test or tests taken at the request of a law enforcement officer.

Ohio Rev. Code § 4511.19 (D)(3) is a traffic statute that addresses pedestrians driving while under the influence of alcohol, or drugs, and protocols for alcohol and drug testing.

Defendant supports its position that Ohio Rev. Code § 4511.19 (D)(3) is not the public policy of Ohio by stating that the clear purpose of the statute is to set forth: (1) the unlawful amount of alcohol or drugs present for a person to be considered to be driving while under the

influence of alcohol or drugs; (2) provisions related to the introduction of alcohol and drug test evidence for criminal prosecution (or juvenile court proceedings) for such a violation; (3) the ability to have an independent and properly authenticated test (in addition to any test administered by law enforcement) considered with any other relevant and competent evidence in determining the guilt or innocence of the defendant; and, (4) to provide for penalties for driving while under the influence of alcohol or drugs.  ECF Dkt. #25-1 at 14.  Defendant posits that nowhere does the language of Ohio Rev. Code § 4511.19 (D)(3)  indicate that employers must provide employees who have tested  positive for illegal drugs with an opportunity to take a second, independent drug test at their own expense.  Defendant concludes that Plaintiff inappropriately asserts that the alcohol and drug testing protocols relating to traffic matters applies to the alcohol and drug testing procedures by private employers of commercial drivers

Defendant cites to the Court of Appeals of Ohio, Tenth District, case law that supports its contention. In *Hout v. Jess Howard Elec. Co.*, No. 07AP-971, 2008 WL 4416654, at *1 (Ohio Ct. App., Sept. 30, 2008), an employee was terminated by his employer for testing positive for alcohol under his employer's alcohol and drug testing policy.  The employee brought a series of claims against the employer, including a claim for wrongful termination in violation of public policy.  *Id*.  As the basis for his wrongful termination claim, the employee alleged that his employer violated clear public policy when it terminated his employment based on an alcohol test that the employer did not verify using confirmatory testing.  *Id*. at 2.  The employee relied on provisions of the "Drug-free workplace discount program" under Ohio workers' compensation law to establish the clarity element of his claim for wrongful termination by contending that the provisions "manifests a clear public policy in favor of ensuring integrity in the testing of employees for drugs and alcohol." *Id*. at 3.  The Ohio Court of Appeals concluded that the statute relied on by the employee "merely specifies the mechanism employers must use to accomplish the overarching purpose of the drug-free workplace program," and that its primary purpose "is to promote safety in the workplace by identifying those employees who are likely to cause work-related accidents because drugs and/or alcohol impairs their ability to function." *Id*.  Therefore, the Ohio Court of Appeals rejected the employee's argument by holding that the confirmatory

-10-

testing provisions of the workers' compensation law did not support a finding that the employer violated public policy by not providing confirmatory testing.

Similar to *Hout*, this Court agrees with Defendant that the "overarching purpose" of Ohio Rev. Code §4511.19 (D)(3) is to provide a mechanism by which an individual who has been charged/arrested for driving while intoxicated may obtain independent testing that could be used to establish his/her innocence of a crime. ECF Dkt. #25-1 at 16. Plaintiff cannot establish that Ohio Rev. Code §4511.19 (D)(3) is the clear public policy of the State of Ohio because the purpose of the statute is not to require private employers to allow at-will employees who fail a drug test to take a second, independent drug test; rather the purpose is for individuals to assist in proving their innocence of the crime of driving while under the influence.

In Plaintiff's reply to Defendant's memorandum in opposition to Plaintiff's motion for partial summary judgment and memorandum contra Defendant's motion for summary judgment, Plaintiff briefly cites 49 U.S.C. § 31306(c)(5) as an alternate basis for his public policy claim. ECF Dkt. #29 at 3. However, Plaintiff provides no facts or arguments supporting his claim for why 49 U.S.C. § 31306(c)(5) constitutes the public policy of Ohio; therefore, Plaintiff fails to meet his reciprocal burden on summary judgment and the court finds that this late and unsupported assertion fails as a matter of law.

Accordingly, this Court finds that Plaintiff's wrongful termination claim fails as a matter of law.[1]

### B. Preemption Claim

In Defendant's motion for summary judgment, Defendant also contends that Plaintiff's wrongful termination in violation of public policy claim is preempted by both the Federal Motor Carrier Safety Administration's ("FMCSA") testing regulations and the Federal Omnibus Transportation Employee Testing Act of 1991 ("FOTETA"). ECF Dkt. #25-1 at 10-11. Among other things, FOTETA requires drug testing for transportation workers in safety-sensitive

---

[1]Because Plaintiff fails to establish the first element required to prove a wrongful termination in violation of public policy tort, this Court will not address the other elements required to establish the claim.

-11-

positions. *Id*. at 10. Specifically, FOTETA requires mandatory pre-employment, reasonable suspicion, post-accident, and random drug testing of aviation, railway, commercial motor carriers, and mass transit transportation workers. *Id*. Within FOTETA, Congress states that "the greatest efforts must be expended to eliminate the abuse of alcohol and use of illegal drugs, whether on duty or off duty, by those individuals who are involved in the operation of aircraft, trains, trucks, and buses. . . ." *Id*.

Additionally, FOTETA mandates the regulations established within 49 U.S.C. § 31306, which prescribes regulations specified by the Secretary of Transportation relating to the conduct of testing of transportation employees for drug use and comprehensive standards for laboratory controlled substances testing and laboratory procedures. *Id*. at 11. Within 49 U.S.C. § 31306(c)(5), the statute provides for the Secretary of Transportation to develop testing and laboratory requirements that:

> provide that each specimen be subdivided, secured, and labeled in the presence of the tested individual and that a part of the specimen be retained in a secure manner to prevent the possibility of tampering, so that if the individual's confirmation test results are positive the individual has an opportunity to have the retained part tested by a 2d confirmation test done independently at another certified laboratory if the individual requests the 2d confirmation test not later than 3 days after being advised of the results of the first confirmation test.

Defendant asserts that its preemption claim is based off of preemption language within 49 U.S.C. § 31306(g) which provides:

> A State or local government may not prescribe or continue in effect a law, regulation, standard, or order that is inconsistent with regulations prescribed under this section. However, a regulation prescribed under this section may not be construed to preempt a State criminal law that imposes sanctions for reckless conduct leading to loss of life, injury or damage to property.

ECF Dkt. 25-1 at 11. Defendant cites to *Keaveney v. Town of Brookline*, 937 F. Supp. 975, 982 (D.Mass. 1996), asserting that "[t]he scope of [FOTETA's preemption] language is broad. It encompasses situations where a State law attempts to regulate in the same area as a federal law, but in a contradictory manner. It also encompasses situations where the enforcement of a State law might thwart the intention of Congress." *Id*. at 10. Additionally, Defendant argues that FOTETA's preemption effect is necessary to ensure a uniform scheme for the purpose of

commercial motor vehicle operator safety, and that it was the intent of Congress to occupy the entire field of drug testing of transportation industry employees. *Id*.

Plaintiff refutes Defendant's preemption argument by asserting that Ohio Rev. Code § 4511.19 (D)(3) is "not inconsistent" with 49 U.S.C. § 31306 because the two statutes are not in conflict with each other. ECF Dkt. #29 at 2. However, this Court finds that Defendant's preemption argument is valid because Ohio Rev. Code § 4511.19 (D)(3)  Plaintiff's Ohio statute is inconsistent with the federal statute cited by Defendant. The primary inconsistency between the two statutes involves the provisions regarding drug and alcohol retesting procedures. Generally, Plaintiff's Ohio statute states that a person may have a second test done at the person's expense, using a separate sample from the first test. *See* Ohio Rev. Code § 4511.19 (D)(3). On the contrary, 49 U.S.C. § 31306(c)(5), cited by Defendant, only permits for "an opportunity to have the retained part [of the original urine or blood specimen] tested by a 2d confirmation test done independently at another certified laboratory. . . ."  Therefore, Plaintiff's Ohio Rev. Code § 4511.19 (D)(3) statute is inconsistent with FOTETA's regulations because the federal regulations do not permit an independent drug test of a new specimen taken days after the original.

Finally, this Court notes that the individual purposes of the two statutes are inconsistent with each other. While Ohio Rev. Code § 4511.19 (D)(3) is a traffic statute intended to regulate drug and alcohol testing procedures for people pulled over while driving intoxicated,  FOTETA's 49 U.S.C. § 31306(c)(5) provision regulates drug and alcohol testing procedures for commercial drivers.  Furthermore, this Court is in agreement with Defendant that nothing in FOTETA's regulation (1) prohibit an employer from immediately terminating a safety sensitive employee who tests positive for illegal drugs or (2) requires an employer to retain an employee who has failed a drug test, even if a split specimen test creates a conflict with the original test. ECF Dkt. #30 at 3. Therefore, Defendant's preemption argument is valid.

For these reasons, this Court grants Defendant's motion for summary judgment with respect to Plaintiff's claim for wrongful termination in violation of public policy under Ohio law. As indicated *supra*, Plaintiff raised an issue regarding FOTETA as an alternative in his response to Defendant's motion for summary judgment and his reply against Defendant's motion for

-13-

summary judgment. ECF Dkt. #29. However, beyond two sentences, Plaintiff provides no facts or arguments as to this assertion in order to sustain his burden on summary judgment.

### C. Invasion of Privacy Claim

Defendant also argues in its motion for summary judgment that Plaintiff cannot establish the elements of his claim for invasion of privacy. ECF Dkt. #25 at 1. In Ohio, there are four distinct causes of action for invasion of privacy: "(1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; [and] (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Welling v. Weinfeld*, 866 N.E.2d 1051, 1053-1054 (Ohio 2007). Defendant contends that based off of Plaintiff's complaint, Plaintiff is not pursuing an invasion of privacy cause of action involving intrusion upon seclusion, solitude, or private affairs; nor is Plaintiff pursuing a claim that Defendant appropriated Plaintiff's name or likeness. ECF Dkt. #25-1 at 17. Therefore, Defendant only addresses the "false light" theory and the public disclosure of private facts theory. *Id.*

In order to succeed on a claim under the false light theory of invasion of privacy, Plaintiff must establish that "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Welling*, 855 N.E.2d at 1059. In order for a claim for false light invasion of privacy to be actionable, "the statement made must be untrue. . .[and] the information must be 'publicized,' which is different from published." *Id.* at 1057. Publicity "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.*(quoting RESTATEMENT (SECOND) OF TORTS § 625D cmt. a (1977)).

This court agrees with Defendant that under the "false light" theory, Plaintiff's invasion of privacy claim fails as a matter of law. It is undisputed that the statements allegedly made by others is true because Plaintiff did test positive for a controlled substance, and Plaintiff was

-14-

terminated for testing positive for a controlled substance. Therefore, Plaintiff cannot establish that an untrue statement was made so as to satisfy the "false light" requirement.

Even if a false statement was made, Defendant is correct in stating that the undisputed material facts establish that the statement was not publicized in the manner required to support a claim under the public disclosure of private facts theory of invasion of privacy. ECF Dkt. #25-1 at 18. The facts support that no communication was made to the public at large regarding Plaintiff's failure of a drug test or his termination by Defendant because of his failing the drug test. Plaintiff admitted that there was no information about him failing the drug test or his termination in the newspaper, on television, or on the internet. At most, it was confined to the employees at the Service Center. Moreover, even if Plaintiff is correct that Holtz told Gallagher that Plaintiff had failed a drug test, the Sixth Circuit Court of Appeals has held that "it is not an invasion of privacy to disclose an embarrassing fact to a single person or even a small group of persons." *Yoder v. Ingersoll-Rand Co.*, No. 97-3710, 1998 WL 939885, at *3 (6th Cir. 1998)(quoting RESTATEMENT (SECOND) OF TORTS § 625D). Therefore, Plaintiff's claim based on the "false light" theory of invasion of privacy fails as a matter of law.

In order to succeed on a claim under the public disclosure of private facts theory of invasion of privacy, Plaintiff must establish three elements: "(1) a clearly private fact; (2) public disclosure of the private fact; and (3) a showing that the matter made public is one which would be highly offensive and objectionable to a reasonable person." *Greenwood v. Taft, Stettinius, & Hollister*, 663 N.E.2d 1030, 1035 (Ohio Ct. App. 1995). "Publicity" under this theory means "communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge as opposed to 'publication' [as used in defamation cases an] meaning any communication by the defendant to a third person." *Seta v. Reading Rock, Inc.*, 654 N.E.2d 1061, 1068 (Ohio Ct. App. 1995). As discussed above, Plaintiff cannot meet the publicity requirement necessary for the public disclosure of private facts theory of invasion of privacy, and therefore, Plaintiff's claim of invasion of privacy fails as a matter of law.

Accordingly, this Court grants Defendant's motion for summary judgment with respect to Plaintiff's claim for invasion of privacy.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment (ECF Dkt. #25) and DENIES Plaintiff's motion for partial summary judgment (ECF Dkt. #24). The Court dismisses Plaintiff's complaint in its entirety with prejudice.

IT IS SO ORDERED.

Date: July 21, 2017 */s/ George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE